IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD E. and LESLIE A. | : | |
| CHAMBERS, as GUARDIANS of | : | CIVIL ACTION |
| FERREN CHAMBERS an incapacitated | : | |
| person and RONALD E. and LESLIE | : | |
| A. CHAMBERS, in their own right, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF | : | No. 05-2535 |
| PHILADELPHIA BOARD OF | : | |
| EDUCATION, | : | |
| Defendant. | : | |

M E M O R A N D U M

GENE E.K. PRATTER, J.                                                     AUGUST 10, 2012

I.      BACKGROUND[1]

The Court previously issued a Memorandum and Order granting the School District's

Motion for Summary Judgment.  See Chambers v. Sch. Dist. of Phila. Bd. Of Educ., 827 F.

Supp. 2d 409 (E.D. Pa. 2011).  The Court determined that in order to be eligible for

compensatory damages under the Rehabilitation Act ("§ 504") and the Americans with

Disabilities Act ("ADA"), where the underlying alleged discriminatory conduct was a denial of a

Free Appropriate Public Education ("FAPE") pursuant to the Individuals with Disabilities

_____

[1] The complete factual background of this case is set forth in Chambers v. Sch. Dist. of
Phila. Bd. Of Educ., 827 F. Supp. 2d 409 (E.D. Pa. 2011).

Education Act ("IDEA"), a plaintiff must prove some level of intent to discriminate on the part of

the school district.  Without determining what level of intent a plaintiff must prove (e.g., bad

faith, deliberate indifference, etc.), after considering all of the evidence cited by the Chambers

Plaintiffs and the School District, the Court held that the Chambers Plaintiffs did not marshal

sufficient evidence that the School District acted even with deliberate indifference toward Ferren

Chambers's educational needs.  Accordingly, the Court granted summary judgment in favor of

the School District without prejudice.[2]

In the earlier Memorandum Opinion, the Court pointed out two major flaws with the

Chambers Plaintiffs' summary judgment papers.  First, after determining that the due process

hearing officer's April 2, 2004 decision was inadmissible as evidence here, the Court observed

that the Chambers Plaintiffs mistook the due process hearing officer's decision for record

evidence, and erroneously relied on the decision itself in support of their argument that the

School District acted with deliberate indifference, rather than bolstering the summary judgment

record with direct evidence suitable here, which evidence may well have been underlying the

Hearing Officer's decision.

---

[2] Although granting a motion for summary judgment "without prejudice" is not the norm, there are multiple instances of district courts in the Third Circuit doing so.  See, e.g., Bogue v. Vaughn, No. 91-5046, 1993 WL 497851, at *11 (E.D. Pa. Dec. 1, 1993) (Reed, J.); see also In re Ford Motor Co. E-350 Van Prods. Liability Litig., No. 03-4558, 2010 WL 2813788,  at *17-19 (D.N.J. Jul. 9, 2010); Peterson v. Am. Telephone & Telegraph Co., No. 99-4982, 2004 WL 190295, at *13 (D.N.J. Jan. 9, 2004).  Accord Rocheux Int'l of N.J., Inc. v. U.S. Merchants Fin. Grp., Inc., 741 F. Supp. 2d 651, 671 (D.N.J. 2010); Shetterly v. Sony Elec., Inc., No. 02-862, 2005 WL 2219473, at *9 (W.D. Pa. Sept. 13, 2005).  Regardless of the procedural idiosyncracies of this case following the grant of summary judgment to the School District, they are collateral to the primary issue before the Court, which is discussed below.

Second, the Court noted that the Chambers Plaintiffs' repeatedly failed to cite to

documentary evidence that *was* in the summary judgment record that might or might not have

raised an inference that the School District acted with deliberate indifference toward Ferren's

needs.  As one pertinent example, the Court observed that the Chambers Plaintiffs physically

attached the March 18, 2004 due process hearing transcript as their Exhibit 2 to their Motion for

Partial Summary Judgment (Doc. No. 97), but failed to cite to it, refer to it in any respect, or use

it in any way either in support of their motion or in opposition to the School District's motion.

The Court neither ruled on the import of the sworn testimony in the hearing transcript nor

formed an opinion on whether such testimony was or was not admissible or sufficient in and of

itself to raise a genuine issue of material fact.  Rather, due to the highly sensitive and sympathetic

nature of the Chambers Plaintiffs' situation, the Court sought to give the Chambers Plaintiffs the

limited opportunity, in the form of a motion for reconsideration or motion to reopen, to explain

what, if any, significance the Court should or could have given this evidence, if indeed, the

Chambers Plaintiffs had actually cited to it.  By providing this opportunity, the Court made clear

that:

> [T]he issue of what constitutes "the record" for purposes of a summary judgment motion
> and, of even greater practical importance, the Rules-based obligation of a party to cite
> materials to the Court (not an obligation of the Court to root through a host of papers
> hunting for possible genuine disputes of material facts), are of considerable importance to
> the outcome of these motions and *possibly*, a *potential* justification for a subsequent
> request that the Court permit the parties to "try again."

Id. at 416 (emphasis added).  Notwithstanding the Court's intimation that it might permit the

parties to "try again," the Court further explained that any such "possibl[e]" revisiting of the

specific issue "with more appropriate briefing and/or record references" would depend upon the

parties "follow[ing] both the Rules of Civil Procedure and this Court's published rules for the

submission of such motions." Id. at 421.  The Court concluded that:

> [I]n the event a bona fide, good faith argument can be made that the Chambers Plaintiffs
> erred in their understanding as to the "record" on which they could or should base their
> summary judgment motion and/or as to their obligations to raise such issues, the Court
> would permit an application for leave to re-open and supplement these summary
> judgment papers, so long as any such effort was undertaken in keeping with the time
> limits attendant to motions for reconsideration.

Id. at 430.

In other words, the Court left open the prospect for the Chambers Plaintiffs to file a

motion for reconsideration, *if* they could direct the Court to appropriate citations in the *pre-*

*existing* summary judgment record (i.e., what was already presented to the Court in the summary

judgment briefing), and second, *if* they could argue why, if at all, that evidence compels the

Court to reconsider its grant of summary judgment.  In a subsequent November 16, 2011 Order,

the Court stressed that the opportunity to file such a motion was "not an invitation to the

Plaintiffs to 're-fil[e] an entirely new motion for summary judgment' or to 'review and

assembl[e] . . . hundreds and hundreds of educational records . . . .'"[3]  (Doc. No. 135).

---

[3] Although the Court ruled in its Memorandum Opinion that any such application for
leave to re-open and supplement the summary judgment papers must be undertaken in
accordance with the time limits for filing a motion for reconsideration, see Local Rule 7.1(g)
("Motions for reconsideration . . . shall be . . . filed within fourteen (14) days after the . . . order
. . . concerned."), again because of several unique features of this case and challenges facing
counsel, the Court issued the November 16, 2011 Order to clarify that any such application
would be due no later than November 21, 2011, twenty-eight (28) days from the date the Court
issued its Memorandum and Order  (Doc. No. 135).

Notwithstanding the Court's admonitions and limiting instructions, on November 17, 2011, the Chambers Plaintiffs filed a Motion to Alter Judgment (Doc. No. 136-137) in which they attached an affidavit from Ronald Chambers which referenced multiple documents that had not been part of the summary judgment record as of October 24, 2011.  In an effort once again to clarify the bounds of the Court's ruling, and how the Chambers Plaintiffs had exceeded the Court's limited indulgence, the Court held a status conference on November 22, 2011.

The day after the conference, Plaintiffs' Counsel sent a letter notifying the Court that he did not intend to withdraw the Affidavit previously filed with the Court on November 17, 2011, and requesting permission to supplement his post-summary judgment filings with a brief offering citations to the March 2004 hearing transcript and other portions of the summary judgment record.  Late that same day, the Chambers Plaintiffs filed a Motion to Supplement their Summary Judgment Papers (Doc. No. 141), continuing to argue that the Court should consider the additional newly submitted evidence along with Mr. Chambers's Affidavit.

On November 28, 2011, the Court issued an Order memorializing the parties' understanding following the November 22, 2011 status conference (Doc. No. 143).  The Order provided:

> Without deciding whether the Affidavit and accompanying exhibits (Docket No. 136) are properly before the Court, or whether the Motion to Supplement (Docket No. 141) is or is not meritorious, the Chambers Plaintiffs' shall have until 12:00 p.m. (Noon) on December 9, 2011 to properly supplement their Summary Judgment papers with additional citations to the *pre-existing* Summary Judgment record (i.e. the summary judgment record as of the date of the Court's October 24, 2011 Memorandum and Order).

(Doc. No. 143).  Consistent with the Court's Order, the Chambers Plaintiffs filed a "Supplement

to Her Opposition to Defendants' Motion for Summary Judgment" on December 8, 2011 (Doc.

No. 145).  However, again, in contravention of the Court's Orders, the Chambers Plaintiffs

provided two sets of exhibits that had not been part of the summary judgment record as of the

date of the Court's October 24, 2011 decision.

On December 30, 2011, the School District filed its opposition to the Chambers's

Motion.  (Doc. No. 148).

## II.    DISCUSSION

Regardless of how the Chambers Plaintiffs caption their various post-summary judgment

filings, it is the "function of the motion, not the caption, [that] dictates which Rule applies."

Johnson v. Palakovich, No. 04-5575, 2007 WL 2702915, at *1 n.3 (E.D. Pa. Sept. 13, 2007)

(citing Smith v. Evans, 853 F.2d 155, 158 (3d Cir. 1988).  Thus, in light of the procedural

posture of this case and the Chambers Plaintiffs' representations,[4] the Court construes the

Chambers Plaintiffs' various motions to alter judgment, re-open, and supplement as a motion for

reconsideration.

Motions for reconsideration are rarely granted due to the Court's "strong interest in the

finality of judgments."  Schafer v. Decision One Mortg. Corp., No. 08-5653, 2009 WL 1886071,

at *3 (E.D. Pa. Jun. 30, 2009) (citing Continental Cas. Co. v. Diversified Indus., Inc., 884 F.

Supp. 937, 943 (E.D. Pa. 1995)).  To succeed on a motion for reconsideration, the moving party

---

[4] Indeed, in his letter to the Court, Plaintiffs' Counsel reiterated the parties' understanding that the pending motion would be construed as a Motion for Reconsideration (Doc. No. 144, Attachment 1).

must demonstrate either (1) an intervening change in the controlling law; (2) the availability of

new evidence which was not available when the court issued its order; or (3) the need to correct a

clear error of law or fact or to prevent manifest injustice.  Max's Seafood Cafe v. Quinteros, 176

F.3d 669, 677 (3d Cir. 1999); North River Ins. Co. v. Cigna Reins. Co., 52 F.3d 1194, 1218 (3d

Cir. 1995).

A motion for reconsideration must not raise additional arguments that the movant "could

have made but neglected to make prior to judgment."  Holsworth v. Berg, No. 05–1116, 2005

WL 1799409, at *3 (E.D. Pa. July 26, 2005).  This is because reconsideration is not permitted

simply to allow a "second bite at the apple."  See Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d

1220, 1231 (3d Cir. 1995).  Indeed, "[d]ocuments that are not a part of the record when a district

court decides a summary judgment motion cannot be submitted as evidence in support of a

motion for reconsideration of the grant of summary judgment."  Conway v. A.I. DuPont Hosp.

For Children, No. 04-4862, 2009 WL 1492178, at *3 (E.D. Pa. May 26, 2009).

The Chambers Plaintiffs, in one manner or another, argue that each of the three permitted

justifications for granting a motion for reconsideration are applicable here.  For the reasons that

follow, the Court concludes that none are applicable and denies the Chambers Plaintiffs' motion

for reconsideration.

### A.      Intervening Change of Controlling Law

The Chambers Plaintiffs suggest in their papers that the Court's holding that a plaintiff

must prove intent to discriminate in order to sustain a claim for compensatory damages under the

ADA and § 504 constitutes an intervening change of controlling law.  (Doc. Nos. 134, 137, 145).

This argument is patently circular.  The Court's own ruling cannot constitute a "change of

controlling law" that would justify reconsideration of that same ruling.

Putting aside the logical difficulties with this argument, throughout its summary judgment

briefing, the School District argued that the Chambers Plaintiffs were required to prove

intentional discrimination to sustain their claims for compensatory damages under the ADA and

§ 504 (Doc. No. 100, at 11-15).  Likewise, the Chambers Plaintiffs responded in kind to the

School District's arguments, asserting that intent was not a necessary element of their claim

(Doc. No. 107 at 16-19), and that genuine issues of fact existed as to the School District's intent

to deny Ferren a FAPE (Doc. No. 107, at 19-22).  Therefore, even if the Court's own ruling could

constitute an intervening change of controlling law – which it clearly cannot – the Chambers

Plaintiffs cannot credibly argue that they were caught off guard by the Court's decision as some

kind of venture off the beaten path of existing case law.

The Chambers Plaintiffs do not assert any other potential intervening change of

controlling law.  Accordingly, this argument will not justify reconsideration of the Court's prior

ruling.

### B.    New Evidence

In their filings since the October 24, 2011 Memorandum Opinion (Doc Nos. 136, 137,

139, 141, 142, 145, 146, 147 and 149), the Chambers Plaintiffs have submitted to the Court

affidavits and other documentary evidence that were not before the Court at the time it issued its

summary judgment opinion.  The Chambers Plaintiffs seem to argue that the Court should

consider these documents, affidavits, and other evidence as "new evidence" for the purposes of their motion for reconsideration.  However, this evidence that the Chambers Plaintiffs now attempt to present to the Court is not "new evidence" as it pertains to a motion for reconsideration.

Stated simply, "new evidence" does *not* mean "newly presented" or "newly cited" evidence.  Where particular evidence was not in the record when the district court decided a summary judgment motion "a party may not submit that evidence in support of a motion to reconsider a grant of summary judgment."  Pavlik v. Lane Ltd./Tobacco Exps. Int'l, 135 F.3d 876, 882 n.2 (3d Cir. 1998).  In their initial summary judgment briefing, the Chambers Plaintiffs made a strategic choice to rely on the Hearing Officer's decision as record evidence and omitted from the summary judgment record the vast majority – if not, all – of the raw material, i.e., the evidence that may have formed the basis of the hearing officer's decision.  See Chambers, 827 F. Supp. 2d at 426.  The Chambers Plaintiffs cannot now bolster the summary judgment record with the evidence they earlier had, but failed to present to the Court in their original summary judgment briefing.

As noted above, the Court did take note of the Chambers Plaintiffs' failure to include this evidence as part of the summary judgment record.  But the Court did not – and indeed, cannot – give license to supplement the summary judgment *record* with additional evidence, or to reargue the parties' summary judgment motions.  In other words, that ship has sailed.  Accordingly, the Court does not grant the Chambers Plaintiffs' motion on the basis of "newly discovered"

evidence, and will strike Mr. Ronald Chambers's affidavit and accompanying exhibits from the record as having been improperly tendered.

### C.      Manifest Injustice

"Where the grounds for the motion for reconsideration are to correct a manifest injustice, 'the party must persuade the court that not only was the prior decision wrong, but that it was clearly wrong and that adherence to the decision would create a manifest injustice.'" Segal v. Strausser Enters., Inc., No. 07-4647, 2011 WL 3567269, at *3 (E.D. Pa. Aug. 12, 2011) (citation omitted).  A movant cannot establish a manifest injustice simply by rehashing arguments which the Court has already addressed and rejected.  See Seidman v. Am. Mobile Sys., 965 F. Supp. 612, 629 n.2 (E.D. Pa. 1997).

As discussed, the Court extended to the Chambers Plaintiffs the opportunity to file a motion for reconsideration, first, directing the Court to evidence, if it exists, in the pre-existing summary judgment record that credibly may have created a genuine issue of material fact, and second, arguing why, if at all, that evidence compels the Court to reconsider its grant of summary judgment.  Although not stated as such, the most plausible, though admittedly tenuous, ground for reconsideration in this case may have been that the failure to reconsider and analyze such evidence would amount to a manifest injustice.  This, of course, would have been up to the Plaintiffs to try to argue in the final instance.

Although it is arguable whether the Court ought to have invited or granted this limited allowance at all, the Court elected to do so.  Nevertheless, considering only the Chambers Plaintiffs' citations to record evidence in their supplemental filings – as opposed to any new

materials they have presented to the Court, or materials which the Court has already excluded, has determined do not constitute record evidence, or has concluded do not raise an issue of material fact – the Chambers Plaintiffs fail to raise an issue of material fact, let alone a colorable argument that manifest injustice would result if the Court refuses to reconsider its October 24, 2012 Memorandum Opinion.

In the Court's Memorandum Opinion, the March 2004 hearing transcript is identified as one potential example of evidence in the record to which the Chambers Plaintiffs failed to cite and about which they offered no argument.  Rather than strategically use any of the substance of the transcripts, the Chambers Plaintiffs now cite to the hearing transcript at length in Document Number 145, but offer the Court little more in the way of evidentiary support.

Indeed, the vast majority of the Chambers Plaintiffs' citations to the hearing transcript constitute Mr. Chambers's own self-serving testimony.  This testimony, elicited by his own attorney with open-ended questions on direct examination, much constituting nothing more than rank hearsay, is comparable to a self-serving affidavit, and is insufficient, without more, to create an issue of material fact.  See Napier v. City of New Castle, 407 F. App'x 578, 584 n.6 (3d Cir. 2010) ("[S]elf-serving testimony as to information of which [the plaintiff] had no direct knowledge cannot create a material issue of fact that allows this case to survive summary judgment."); Brown v. Cohen, No. 09-2909, 2012 WL 2120281, at *5 n.3 (E.D. Pa. Jun. 12, 2012) (noting that the plaintiff's self-serving deposition testimony was insufficient to establish a disputed issue of fact in light of the defendant's evidence on record); see also Gonzalez v. Secretary of Dep't Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) ("As a general proposition,

conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." (citation marks omitted)).  As the Court explained in its October 24, 2011 Memorandum Opinion with respect to Mr. Chambers's deposition testimony, "a jury could not conclude from these various disparate parental testimonial conclusions (unaided as they are by any other evidence) that the School District acted with deliberate indifference toward Ferren because of her disabilities or, indeed, at all."  Chambers, 827 F. Supp. 2d at 428.  The same can be said for Mr. Chambers's due process hearing testimony.

The hearing testimony of individuals other than Mr. Chambers cited by the Chambers Plaintiffs is equally unavailing.  This testimony includes the testimony of Ms. Lenore Eisman and various on-record stipulations by the counsel for the School District.  None of this testimony, together with any of the evidence previously considered by the Court on summary judgment, raises an issue of material fact.  Certainly it does not paint a picture of a manifest injustice requiring the Court to reconsider its earlier order.

Addressing first the testimony of Ms. Eisman, the Chambers Plaintiffs cite to disparate portions of her hearing testimony where she admitted that she had never met Ferren (Doc. No. 145 ¶ 49) and that she "had 'no knowledge" as to whether there were any qualified teachers at Wordsworth (See Doc. No. 145 ¶¶ 5, 24).  However, Ms. Eisman first became Ferren's case manager in the fall of 2003, and as her case manager, Ms. Eisman "ha[d] no programmatic responsibility for Ferren," but rather was only responsible for "seeing that due process take place" once complaints had been lodged.  See Tr. at 64.  Considering her limited role in Ferren's education, this out-of-context testimony does not shed any light on whether the School District

was deliberately indifferent to Ferren's educational needs or intentionally discriminated against her.

The Court is similarly unpersuaded by the Chambers Plaintiffs' citation to stipulations by counsel for the School District in the hearing record regarding the procedural history of the case, and various delays that occurred between the Chambers Plaintiffs' June 2003 rejection of Ferren's proposed IEP, and the March 2004 hearing.  While the School District did indeed misplace and cause other delays in processing the Chambers Plaintiffs' due process request, that cannot be said to constitute deliberate indifference or intentional discrimination in this case.

Upon review of the Chambers Plaintiffs various submissions, the Court concludes that they have not directed, and indeed are unable to direct, the Court to any other evidence in the pre-existing record that could potentially raise an issue of material fact.  In addition, upon further reflection, even assuming that the Chambers Plaintiffs were able to cite to materials in the pre-existing summary judgment record that could raise an issue of material fact, they have offered no justification for their failure to properly cite to that evidence in a timely fashion at the summary judgment stage.  See Fed. R. Civ. P. 56(c), (e).  Indeed, the Chambers Plaintiffs are unable to demonstrate any manifest injustice that would justify reconsideration of the Court's ruling beyond their own displeasure and dismay with the Court's decision.  However sympathetic their daughter's situation may be and however dissatisfied they may be with the legal framework within which these issues must be considered and resolved, these are insufficient to meet the substantial burden for granting a motion for reconsideration.  See Segal, 2011 WL 3567269, at *2 (citation omitted).

## III.    CONCLUSION

For the foregoing reasons, the Court will deny the Chambers Plaintiffs' motion for

reconsideration.


BY THE COURT:


   /s/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge