IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD E. and LESLIE A. CHAMBERS, as GUARDIANS of FERREN CHAMBERS an incapacitated person and RONALD E. and LESLIE A. CHAMBERS, in their own right, : : : : : : | : : : : : : : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA BOARD OF EDUCATION, Defendant. | : : : : | No. 05-2535 |

**M E M O R A N D U M**

PRATTER, J.                                                                                           OCTOBER 20, 2014

Plaintiffs Ronald and Leslie Chambers, on behalf of their daughter, Ferren, bring this action for compensatory damages, asserting that the School District of Philadelphia violated § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, and § 202 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, by intentionally failing to provide Ferren with a free appropriate public education ("FAPE").[1]  The parties' third round of summary judgment briefing is now before the Court.  This time, the School District challenges Ferren's claims by arguing they are barred, at least in part, by the statute of limitations and by challenging the compensatory damages she seeks.  Because the "minority tolling statute" applies here and because there are fundamental factual questions regarding damages, the Court will deny the School District's motion for summary judgment.

---

[1] The Chambers family originally asserted claims under 42 U.S.C. § 1983 and the Individuals with Disabilities Education Act ("IDEA"), as well as claims on behalf of parents Ronald and Leslie, in addition to the ADA and RA claims at issue here.  Those other claims were dismissed at various points during this lengthy litigation.

1

**BACKGROUND**[2]

Ferren Chambers, now in her late twenties, is severely developmentally disabled. Ferren's disabilities led to a long series of disputes between the Chambers family and the School District concerning a suitable way to provide Ferren with a FAPE. After being awarded 3,180 hours of compensatory education and $209,000 in an educational trust as a result of a due process hearing before the Bureau of Special Education, the Chambers family filed this suit, claiming, among other things, that the School District intentionally discriminated against Ferren because of her disabilities, in violation of § 504 of the RA and § 202 of the ADA, and seeking compensatory damages for the School District's alleged discrimination. The parties now dispute which statute of limitations applies to the remaining claims and how the applicable limitations period should be applied. They also dispute the appropriate measure of damages.

**LEGAL STANDARD**

Upon motion of a party, summary judgment in a federal case is appropriate if, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials," the moving party persuades the district court that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *Miller v. Ind. Hosp.,* 843 F.2d 139, 143 (3d Cir.1988).

In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's

---

[2] The Court need not recite the long factual and procedural history of this matter, inasmuch as both this Court and the Third Circuit Court of Appeals have done so at length in previous opinions. *See, e.g., Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.,* 537 F. App'x 90 (3d Cir. 2013) ("*Chambers IV*"); *Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.,* No. 05-2535, 2012 WL 3279214 (E.D. Pa. Aug. 13, 2012) ("*Chambers III*"); *Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.,* 587 F.3d 176 (3d Cir. 2009) ("*Chambers II*"); *Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.,* No. 05-2535, 2007 WL 4225584 (E.D. Pa. Nov. 29, 2007) ("*Chambers I*").

favor. *Hugh v. Butler Cty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 83 (3d Cir. 1987).

**DISCUSSION**

    **A.**    **Statute of Limitations**

The Court did not previously address the issue of the statute of limitations governing the RA and ADA claims and whether evidence outside of the 2-year statute of limitations that applies to the IDEA could be considered in evaluating the RA and/or ADA claims, but the Third Circuit Court of Appeals, in its most recent opinion in this litigation, may have suggested an answer to that question. *See Chambers IV*, 537 F. App'x at 97 n.3 ("Although neither the RA nor the ADA has a statute of limitations, the School District argues that the District Court may not consider evidence outside the IDEA's two-year statute of limitations. The District Court did not address this argument, as it was unnecessary to the District Court's holding. Although we believe that Appellants' claims were filed before the statute of limitations took effect, *see Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 370 (3d Cir. 2005) ("[A]mendments to the IDEA have prospective application only . . . . Therefore, the provisions in effect at the time the complaint was filed in 2003 will be applied here."), this issue is more appropriately left to the District Court on remand.")

The School District argues that, despite the Third Circuit Court's "signals," the statute of limitations bars the bulk of Ms. Chambers's claims, *i.e.*, all claims predating May 27, 2003.[3] The School District concedes that prior to the enactment of the IDEA amendments, which took effect months after this case was filed, Pennsylvania's two-year statute of limitations governed

---

[3] The original Complaint in this case was filed on May 27, 2005.

3

similar claims and that that same statute of limitations applies to Ms. Chambers's claims. The Chambers family, however, invokes 42 Pa. C.S. § 5533, the Pennsylvania minority tolling statute, the effect of which would extend until October 15, 2005 (*i.e.,* two years after Ferren's 18th birthday) the deadline for filing these claims. In response, the School District maintains that neither the Pennsylvania minority tolling statute nor any other tolling doctrine applies to Ferren's claims because it would be inconsistent with federal law and would "frustrate[] the ultimate goal of the IDEA and federal policy."

Pennsylvania, like most states, has a statutory provision providing for the tolling of the statute of limitations until a minor reaches the age of majority. The statute provides, in relevant part:

> If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter.

42 Pa. C.S. § 5533. An individual is considered a minor until he or she reaches age eighteen. *Id.* At least one district court in New York has held that applying minority tolling to an RA claim based on an IDEA violation would be inconsistent with the goals of the IDEA (and, by extension, to cases involving claims relating to IDEA violations) to remedy discrimination in education as quickly as possible. *See Piazza v. Florida Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 691-92 (S.D.N.Y. 2011); *see also Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478 (1980) (when a state statute of limitations is borrowed and applied to a federal cause of action, "the state statute of limitations *and* the state tolling rules govern[] . . . except when 'inconsistent with the federal policy underlying the cause of action under consideration'") (emphasis added) (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465

4

(1975)).[4]  Indeed, the IDEA statute of limitations that applies now expressly relies on the *parents* and/or *agency* to act within 2 years of a claim accruing, clearly taking any IDEA claims out of the realm of a minority tolling statute.  *See* 20 U.S.C. § 1415(b)(6)(B), (f)(3)(C).

Courts here in the Third Circuit, however, have applied Pennsylvania's minority tolling statute to RA claims with at least some IDEA underpinnings.  *See Gaudino v. Stroudsburg Area Sch. Dist.*, Civil Action No. 3:CV-12-2159, 2013 WL 3863955, at * 6 (M.D. Pa. July 23, 2013); *Weidow v. Scranton Sch. Dist.*, 3:08-CV-1978, 2009 WL 2588856, at *7 (M.D. Pa. Aug. 19, 2009); *Irene B. v. Philadelphia Acad. Charter Sch.*, No. 02-CV-1716, 2003 WL 24052009, at *6 (E.D. Pa. Jan. 29, 2003).  Indeed, prior to the IDEA's amendment to add an express statute of limitations, some courts in the Third Circuit have applied the minority tolling statute to IDEA claims as well.  *See, e.g., Jeffery Y. v. St. Mary's Area Sch. Dist.,* 967 F. Supp. 852, 855 (W.D. Pa.1997).[5]

---

[4] The School District also cites *Baker v. Southern York Area Sch. Dist.*, No. 1:CV-08-1741, 2009 WL 4793954, at *12-13, n. 4 (M.D. Pa. Dec. 8, 2009), for the proposition that, "A party that wants to pursue only money damages for a FAPE-based claim, relief that is unavailable under the IDEA, should not be able to invoke a statute of limitations scheme that is different than the limitations scheme established by Congress to seek relief under the IDEA."  *Baker*, however, was clearly decided and filed *after* Congress had established a statute of limitations for the IDEA—unlike this case, which predates the creation of an IDEA statute of limitations.

[5] Even if the Court were persuaded to follow case law from a district court outside of this circuit that directly conflicts with case law from courts in this circuit, the *Piazza* case is distinguishable from this one. While the goal of remedying discrimination in education as quickly as possible is relevant to RA and ADA claims seeking relief similar to that available under the IDEA, that goal is not as compelling in cases like this one, where the plaintiff only seeks money damages.  To draw an analogy, courts in this circuit have distinguished between cases seeking IDEA-like remedies under the RA and ADA and cases seeking solely monetary damages like this one when evaluating whether a plaintiff needed to exhaust administrative remedies before filing an RA claim, requiring exhaustion under the former but not the latter circumstances.  *See, e.g., W.B. v. Matula*, 67 F.3d 484, 496 (3d Cir. 1995) ("[W]here the relief sought in a civil action is *not* available in an IDEA administrative proceeding, recourse to such proceedings would be futile and the exhaustion requirement is excused."), *overruled on other grounds by A.W. v. Jersey City Pub. Sch.,* 486 F.3d 791 (3d Cir. 2007).  These courts reason that while, under the IDEA, both addressing issues at a local level and in a timely fashion are important when seeking compensatory education, the provision of which may be time sensitive, those goals are less important when only money is at stake.  The same is true here – when a plaintiff is seeking damages other than compensatory education, there are no peculiarly time sensitive issues that would militate against minority

The School District also argues that the minority tolling statute does not apply to an individual with a mental incapacity. According to the School District, "[n]othing in the 20 year history of this case justifies any application of the minority tolling statute" and "[t]here is absolutely no evidence that Ferren would have been capable of recognizing a cause of action upon reaching her majority." The School District's argument in this regard is made more palatable by its connective focus on the presence of Ferren's parents. Thus, according to the School District, due to Ferren's disability, "the statute of limitations began to run when her parents knew or had reason to know of the alleged injury."

However, the School District does not cite any cases that directly support these arguments. The cases it cites do not hold, as the District urges, that the minority tolling statute does not apply to *minors* suffering from mental incapacity. Instead, these cited cases stand for the proposition that mental incapacity does not *by itself* toll the statute of limitations. *See Lake v. Arnold*, 232 F.3d 360, 366-67 (3d Cir. 2000) ("mental retardation is not a basis for preserving [a] claim under Pennsylvania's tolling statute"); *Walker v. Mummert*, 394 Pa. 146, 149, 146 A.2d 289, 291 (1958) ("permitting the deferment of the institution of a personal injury claim until the end of a prospective plaintiff's period of disability seriously prejudices the person against whom suit is eventually brought").[6] The School District, then, has not provided any compelling reason

---

tolling – or at least no more than there would be in any other claim to which minority tolling applies. Indeed, the *Piazza* court relied heavily on the need to get a student compensatory education as quickly as possible when making its decision, a goal easily frustrated by applying minority tolling and not at issue in this case.

[6] Pennsylvania courts have not specifically addressed whether minority tolling applies to minors with mental incapacity. However, Pennsylvania cases suggest that minority tolling applies to disabled minors. *See Weidow v. Scranton Sch. Dist.*, 2009 WL 2588856, at *7 (applying minority tolling to claim by woman who was considered "disabled" under the RA and ADA). Cases in other jurisdictions have also applied minority tolling statutes to disabled minors. *See, e.g., Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 538 (6th Cir. 2010) (stating that Ohio's tolling provisions applied to a disabled minor's claims "because the minority tolling statute is not inconsistent with . . . the Rehabilitation Act's goal of protecting individuals with handicaps from discrimination.").

why mentally diabled individuals should be provided with *less* protection than everyone else when it comes to statutes of limitations.

Moreover, despite the School District's argument that Ferren's parents could have and should have sued sooner, Pennsylvania joins a majority of jurisdictions in holding that the right to sue remains with the person protected under the minority tolling statute even after a guardian is appointed.  *See Fancsali v. University Health Center*, 761 A.2d 1159, 1164 (Pa. 1999) (stating that "the period within which a minor's action must be commenced is measured not from the time the cause of action accrues, but from the time he or she turns eighteen.  This is true regardless of the fact that a guardian may sue on behalf of a minor at any time after a cause of action accrues."); *see also Drooz-Yoffie v. Baker*, 14 Mass. L. Rptr. 472 (Mass. Super. 2002) ("The minority tolling statute applies even though a guardian represents the disabled party."); *Eiseman v. Lerner*, 380 N.E. 2d 1033, 1035-36 (Ill. App. 1978) (holding that a minor's claim is not barred until two years after he obtains majority, even though a guardian ad litem is appointed).  Again, why a mentally challenged individual should receive *less* protection (and, correspondingly, why her parents should have a *greater* burden) is not satisfactorily explained by the School District, and the Court cannot divine an explanation for such a result.

Moreover, whether the appointment of a guardian terminates the toll ultimately does not matter because, in this case, Ferren's parents were appointed guardians *after* her 18th birthday.  Under the minority tolling statute, Ferren had until two years after she reaches age 18 to sue.  42 Pa. C.S. § 5533.  Ferren turned 18 on October 15, 2003.  Ferren's parents were appointed as her guardians by the Philadelphia Court of Common Pleas, Orphans' Court Division on April 1, 2005.  As her guardians, Ferren's parents filed suit on her behalf on May 27, 2005, roughly one

year and seven months after Ferren turned 18.  Therefore, applying the minority tolling statute,

Plaintiffs sued Defendant within the applicable statute of limitations.[7]

### B. Damages

In its opening brief, the School District seems to argue that if Ferren's damages stem from denial of a FAPE, then she is only entitled to compensatory education as a matter of law, and that she has been fully compensated through the compensatory education she has already received as a result of previous administrative proceedings.  The School District also argues that any obligation it had to Ferren automatically terminated when she reached the age of 21.  However, those views do not square with the case law in this Circuit, which provides that under the RA, compensatory (monetary) damages are available with a showing of intent (here, deliberate indifference, which the Third Circuit Court of Appeals has already held is a question for the jury in this case).  *See, e.g., S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013) (compensatory damages available for RA and ADA claims brought for IDEA violations when deliberate indifference is established).[8]  Moreover, even the cases cited by the School District demonstrate that a school's obligation does not automatically end when a student

---

[7] Defendant and Plaintiffs make other statute of limitations arguments relating to equitable tolling and discovery rule doctrines.  Because minority tolling is dispositive, the Court need not address the other doctrines here.

[8] The School District relies on *Brennan v. Reg'l Sch. Dist. No. 1 Bd. of Educ.*, 531 F. Supp. 2d 245 (D. Conn. 2007), for the proposition that RA claims premised on denial of a FAPE only entitle a plaintiff to compensatory education, rather than additional monetary damages.  This district court case in the Second Circuit, however, relies on Second Circuit precedent that directly conflicts with Third Circuit precedent. *Compare Polera v. Bd. of Educ. Of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478 (2d Cir. 2002) (requiring IDEA exhaustion for a RA claim when the plaintiff sought only compensatory damages) *with W.B.*, 67 F.3d at 496 ("[W]here the relief sought in a civil action is *not* available in an IDEA administrative proceeding, recourse to such proceedings would be futile and the exhaustion requirement is excused."). *Brennan* also directly contradicts Third Circuit Court of Appeals case law that expressly approves awards of damages beyond compensatory education for RA claims involving IDEA violations. *See, e.g., S.H. ex rel. Durrell*, 729 F.3d at 261.

reaches the age of 21.  *See, e.g., Lester H. by Octavia P. v. Gilhool*, 916 F.2d 865, 872 (3d Cir. 1990) (awarding 30 months of compensatory education beyond the age of 21).

In its reply brief, the School District takes a slightly different tack and argues that Ferren has not produced any evidence of damages, beyond those remedied by compensatory education. However, the Chambers family has proffered expert testimony that Ferren would be more highly functioning (and thus not need the same amount of continuing medical and physical care) had she been given an appropriate education *at the appropriate time* (*i.e.*, harmed in a way that compensatory education after the fact could not remedy), and testimony that the entire Chambers family suffered emotional distress as a result of the continuing battles with the School District concerning Ferren's education.  The experts who opined on the former issue have already been the subject of a *Daubert* challenge and have not been excluded.  The School District also argues that it could not possibly have foreseen that its actions could lead to having to pay for Ferren's care in the future, but the cases cited by the School District are readily distinguishable.  *See, e.g., Adam C. v. Scranton Sch. Dist.*, No. 07-CV-532, 2011 WL 996171 (M.D. Pa. Mar. 17, 2011) (denying damages for a mother's loss of consortium claim, as she was not a contemplated beneficiary of the IDEA and therefore such personal damages were not foreseeable to the school district).  While some of the School District's arguments regarding evidence of damages may indeed be appropriate and compelling subjects for motions *in limine*, they are not grounds for dismissing the entire case at this stage.  Thus, the Court will deny the School District's Motion for Summary Judgment with respect to damages.

**CONCLUSION**

For the foregoing reasons, the Court will deny the School District's Motion for Summary Judgment. An appropriate Order follows.

BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge